IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ALBERT M., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | EP-23-CV-00399- RFC |
| § | |
| MARTIN O'MALLEY, Commissioner of § | |
| the Social Security Administration, § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Albert M. appeals from the decision of the Commissioner of the Social Security Administration, denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636, U.S. District Judge Kathleen Cardone referred this case to the undersigned Magistrate Judge for a report and recommendation, and, subsequently, the parties consented to have the undersigned decide the case and enter final judgment. For the following reasons, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### I.   PROCEDURAL HISTORY

On March 29, 2019, Albert filed an SSI application alleging disability beginning on July 9, 2008, due to severe obsessive-compulsive disorder ("OCD"), major depression, and nicotine dependence. Tr. of Admin. R. 27, 71, 84 [hereinafter Tr], ECF No. 7. The disability onset date was later amended to March 29, 2019. *Id.* at 27.

Albert's application was initially denied on November 20, 2019, *id.* at 27, 99–102, and again upon reconsideration on April 9, 2020, *id.* at 27, 123–25. Upon Albert's request, Administrative Law Judge ("ALJ") Gordan Momcilovic conducted a video hearing on September

27, 2022. *Id.* at 27, 43–70. On October 28, 2022, the ALJ issued an unfavorable decision. *Id.* at 24–42. The Appeals Council denied Albert's request for review on March 7, 2023. *Id.* at 14–19. Thus, the ALJ's decision became the Commissioner's final decision in Albert's case. *Id.* at 14.

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

Substantial evidence is "more than a scintilla but less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). To determine whether substantial evidence supports the Commissioner's decision, courts weigh "four elements of proof": "(i) objective material facts; (ii) diagnoses and opinions of treating and examining physicians; (iii) claimant's subjective evidence of pain and disability; and (iv) claimant's age, education, and work history." *Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014) (per curiam). The Court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute [its] judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted); *see also Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ("Conflicts of evidence are for the Commissioner, not the courts, to resolve."). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (citation omitted). If substantial

evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Perez*, 415 F.3d at 461.

A court's finding of legal error requires either automatic reversal or harmless error analysis, depending on the steps taken by the ALJ to reach the final decision. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Broadly, "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached . . . if the ALJ did not err." *Id.* "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citation omitted).

### B. Evaluation Process

Under the Social Security Act, disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An ALJ evaluates disability claims according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the claimant's impairment meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC"). *Id.* § 416.920(e). The RFC "is the most [the claimant] can still do" despite the limitations caused by his physical and mental impairments. *Id.* § 416.945(a)(1). The ALJ then considers the RFC to make the step four and step five determinations. *Id.* § 416.920(e).

At the first four steps, the claimant bears the burden of proving that he is disabled. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). If the claimant meets this burden, at step five the burden shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted). If the Commissioner satisfies this burden, "the burden shifts back to the claimant to rebut this finding." *Perez*, 415 F.3d at 461 (citation omitted).

### C. The ALJ's Findings

In this case, at step one, the ALJ found that Albert had not engaged in substantial gainful activity since March 29, 2019, the amended disability onset date. Tr. 29. At step two, the ALJ found that Albert had the following severe impairment: OCD. *Id.* At step three, the ALJ found that Albert did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 30.

For Albert's RFC, the ALJ determined that Albert could perform "a full range of work at all exertional levels" with the following non-exertional limitations: "the claimant is limited to occasional interaction with the general public, retains the ability to understand, remember, and carry out simple job instructions and work-related tasks, and requires no more than occasional changes in the work setting." *Id.* at 32.

At step four, the ALJ found that Albert had no past relevant work. *Id.* at 36. At step 5, the ALJ found that, considering Albert's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Albert could perform. *Id.* Therefore, the ALJ concluded, Albert was not disabled from the date the application was filed. *Id.* at 37.

**D. Analysis**

Albert alleges that the ALJ erred by (1) failing to include limitations in interacting with coworkers and supervisors in the RFC; (2) failing to consider Randal Rattan, Ph.D.'s opinion that Albert "does not appear capable of carrying out basic instructions and exhibiting contextually appropriate behavior" in assessing the RFC; and (3) failing to include limitations in the ability to adhere to basic standards of neatness and cleanliness in the RFC. Pl.'s Br. 10–16, ECF No. 9.

*1. Limitations in Interacting with Coworkers and Supervisors*

Albert argues that "[t]he medical evidence in this case supports the need for restricting interactions with supervisors and coworkers." *Id.* at 10. He states that Dr. Rattan noted that Albert would have "some difficulty maintaining consistent employment" in "jobs that require frequent social interaction." *Id.* (quoting Tr. 395). The ALJ stated in his opinion that he found "Dr. Rattan's finding of social interaction limitations . . . generally persuasive." *Id.* (quoting Tr. 35). However, whereas "Dr. Rattan's opinion applied social interaction limitations equally to everyone," the ALJ only limited Albert to occasional interaction with the public. *Id.* at 11. Albert argues that the ALJ failed to explain his reasoning for doing so and thus failed to create a logical bridge to his findings in the RFC. *Id.* Albert further argues that this error is not harmless because "[t]he ability to get along with coworkers or peers . . . is 'critical' for the performance of unskilled work." *Id.* at 12 (quoting POMS DI §§ 25020.010(B)(3)(k), (l)). Therefore, he asserts, a limitation in his ability to interact with supervisors and coworkers might have led to a finding of disability. *Id.* at 12.

In the summary conclusions in Section I of the mental RFC assessments, the state agency medical consultants ("SAMCs"), Joel Forgus, Ph.D., and Susan Posey, Psy.D., both rated Albert's ability to accept instructions and respond appropriately to criticism from supervisors as "[n]ot significantly limited" and Albert's ability to get along with coworkers or peers without distracting

5

them or exhibiting behavioral extremes as "[m]oderately limited." Tr. 80, 94. However, the Commissioner points out that both SAMCs noted in their narrative conclusions (Section III of the assessment) that Albert was not limited in his ability to interact with coworkers and supervisors. Br. Supp. Comm'r's Decision 5–6, ECF No. 10 (citing Tr. 80, 94). The Commissioner further argues that the Program Operations Manual System ("POMS") states that the ALJ should use the narrative conclusions in Section III, not the summary conclusions in Section I, of the mental RFC assessment when determining the claimant's RFC. *Id.* at 6. The Commissioner argues that POMS, while it does not have the force of law, does have "value, effect, and persuasive force." *Id.* at 7 (quoting *Taylor v. Saul*, No. 4:18-cv-00765-O-BP, 2019 WL 4667515, at *4 (N.D. Tex. Sept. 25, 2019)).[1] The Commissioner moreover asserts that the unskilled jobs named by the ALJ at step five do not require any significant interaction with coworkers and supervisors. *Id.* at 7–8. The Commissioner also points out that Albert's counsel did not ask any questions of the vocational expert ("VE") about limits on interactions with coworkers and supervisors, and so, he asserts, Albert "waived any challenge to the VE's hearing testimony by failing to develop the issue at the hearing." *Id.* at 8.

In his reply brief, Albert argues that the SAMCs' opinions are internally inconsistent, since they rated Albert as "moderately limited" in his ability to get along with coworkers but then did not include any limitations regarding coworkers in their ultimate mental RFC findings. Pl.'s Reply Br. 2, ECF No. 12. He reiterates that the ALJ should have relied on Dr. Rattan's opinion that Plaintiff's social interactions as a whole should be limited. *Id.* at 3. Lastly, he argues that "it is necessary to have a [VE] provide testimony on what impact, if any, a limitation on social contact

---

[1] *See also Jaramillo v. Colvin*, 576 F. App'x 870, 875 n.3 (10th Cir. 2014) ("The POMS is a set of policies issued by the Administration to be used in processing claims." (internal quotes omitted)).

6

has on whether a person is employable or what impact there is to the number of available jobs in the national economy." *Id.* at 4.

An ALJ does not err if he "decide[s] not to include any mental limitations in the RFC determination, [after] finding that the medical evidence in the record indicated that such limitations were not needed." *Goins v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-870-P, 2023 WL 4475633, at *6 (N.D. Tex. June 16, 2023), *report and recommendation adopted*, 2023 WL 4485941 (N.D. Tex. July 11, 2023).

In Section III of the mental RFC assessment, for their narrative explanations, both Dr. Forgus and Dr. Posey documented: "Claimant can an [sic] understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, *interact adequately w/co-workers and supervisors*, and respond appropriately to changes in routine work settings." Tr. 80, 94 (emphasis added). The ALJ stated that he found the SAMCs' findings to be "generally persuasive because these opinions are internally supported by findings from the record . . . . Furthermore, these opinions are generally consistent with the claimant's ability to engage in activities of daily living . . . ." *Id.* at 35. On the other hand, the ALJ determined that Dr. Rattan's opinion was "partially persuasive" because it was "largely vague" and "in excess of the clinical findings and inconsistent with the claimant's negative history of inpatient psychiatric hospitalizations or decompensations." *Id.* The ALJ added that "Dr. Rattan's finding of social interaction limitations is generally persuasive because it is internally supported by the claimant's clinical presentation," and added that this finding "warrant[s] a limitation to only occasional social interaction, as established in this decision herein." *Id.* at 35–36. Thus, the ALJ took Dr. Rattan's opinion into consideration when adding a limitation on Albert's ability to interact socially with the

7

public but also relied on the SAMCs' findings that Albert would be able to adequately interact with coworkers and supervisors.

The ALJ noted other evidence in the record that accorded with the SAMCs' opinion: Albert had "normal emotional expression, logical thought process, normal speech, unremarkable psychomotor activity, adequate grooming, and good eye contact." *Id.* at 35 (citing *id.* at 76, 90). The ALJ added that Albert had the "ability to engage in activities of daily living like . . . pursuing hobbies like surfing the internet daily[] and spending time with family and friends." *Id.* (citing *id.* at 301–03). He noted that Albert "reported that he spends time with his family every day and with his friends on the weekend . . . . On exams, the claimant frequently demonstrated cooperative behavior with good to adequate eye contact, even despite periodic mood abnormalities." *Id.* at 31. Thus, the ALJ considered and cited evidence in the record when determining the extent of Albert's social interaction limitations.

The record provides other evidence for the ALJ's RFC determination as well. Numerous medical records document Albert as being "cooperative and friendly." *Id.* at 356–61, 397, 400–02, 409–11, 418–21. Dr. Rattan noted in his evaluation of Albert: "History of school-related behavior problems or difficulties in social interactions were not reported." *Id.* at 391. Albert stated during the hearing that he interacts with his mother and sister, whom he lives with, and has a few friends that he sees about twice a month. *Id.* at 56. Thus, substantial evidence in the record backs up the ALJ's determination not to include limitations on interactions with coworkers and supervisors.

   2. ***Consultative Examiner Dr. Rattan's Opinion***

Albert also argues that the ALJ did not address the portion of Dr. Rattan's opinion where he states that "the claimant does not appear capable of carrying out basic instructions and

8

exhibiting contextually appropriate behavior." Pl.'s Br. 13 (quoting Tr. 395). Albert asserts that "there is no explanation anywhere in the decision as to how this portion of Dr. Rattan's opinion was considered." *Id.* at 14. Moreover, Albert claims that this limitation assessed by Dr. Rattan is "work preclusive," *id.*, but contends that the ALJ's RFC formulation omits any limitation corresponding to this opinion. *See id.* at 13 (arguing that "the ALJ was obligated to account for these limitations in the RFC or explain why they were omitted"); *id.* at 14 (arguing that "there is no reason provided as to why these clearly work preclusive limitations were omitted from the RFC").

The Commissioner argues that "the ALJ is not required to discuss in detail every symptom factor or every piece of evidence in every case." Br. Supp. Comm'r's Decision 9. The Commissioner asserts that ALJ did acknowledge Albert's possible difficulties with memory and following instructions and thus limited Albert to "the ability to understand, remember, and carry out simple job instructions and work-related tasks." *Id.* at 10 (quoting Tr. 32). The Commissioner notes that Dr. Forgus and Dr. Posey both concluded that Albert would be able to understand and remember short and simple instructions. *Id.* (citing Tr. 80, 94). The Commissioner asserts that in Dr. Schutte's evaluation of Albert, Albert "exhibited an alert demeanor, grossly intact cognitive functions, clear speech, and grossly intact immediate memory." *Id.* (citing Tr. 34, 405). Further, Albert "experienced 'ample activities of daily living,'" such as "manag[ing] his personal care independently, tak[ing] out the trash, pursu[ing] hobbies like surfing the internet daily, and spend[ing] time with family and friends." *Id.* at 11 (citing Tr. 36, 301–03). Thus, the Commissioner concludes, "[e]vidence of record contradicts [Albert's] claim of extreme memory problems and inability to function due to OCD." *Id.* at 10.

Dr. Rattan conducted a clinical interview with a mental status examination of Albert on October 19, 2019. Tr. 391. In his functional capacity evaluation of Albert, Dr. Rattan noted, "[t]he claimant does not appear capable of carrying out basic instructions and exhibiting contextually appropriate behavior," *id.* at 395, but the ALJ only explicitly addressed Dr. Rattan's statement that Albert "would have some difficulty maintaining consistent employment from a mental health standpoint, particularly for jobs that require frequent social interaction," *id.* at 35.

With respect to Albert's argument that the ALJ was required to address all of Dr. Rattan's opinion, "the ALJ is not always required to do an exhaustive point-by-point discussion" of all of the medical evidence. *Audler*, 501 F.3d at 446; *see also Vandestreek v. Colvin*, No. 7:14–cv–00001–O, 2015 WL 1239739, at *6 (N.D. Tex. Mar. 17, 2015) ("[I]t is well-established that an ALJ can consider all the evidence in the record without directly addressing each piece of evidence in his opinion." (collecting cases)). The ALJ's decision reflects that he considered Dr. Rattan's opinions and findings. *See* Tr. 30–31, 33, 35–36 (citing Dr. Rattan's examination of Albert as Ex. 4F). For example, the ALJ noted, "[d]uring the October 2019 psychological examination, the claimant exhibited poor attention and concentration based on a serial calculation task and a spelling task." *Id.* at 31 (citing *id.* at 394). The ALJ did not err by not carrying out a point-by-point discussion of Dr. Rattan's opinion.

The ALJ's RFC states that Albert can "carry out simple job instructions and work-related tasks." *Id.* at 32. This limitation is supported by the two SAMCs' opinions that Albert could "understand, remember and carry out simple instructions, [and] make simple decisions," which the ALJ found to be "generally persuasive." *Id.* at 35, 80, 94. On the other hand, as with Dr. Rattan's other statement regarding Albert's limitation in social interaction, which the ALJ found was "largely vague," *id.* at 35, Dr. Rattan's opinion that "claimant *does not appear* capable of

10

carrying out basic instructions and exhibiting contextually appropriate behavior" is tentative. *Id.* at 395 (emphasis added). Thus, it is likely that in formulating the RFC, the ALJ permissibly relied on the SAMCs' clearer opinions rather than Dr. Rattan's opinion. Therefore, the Court finds that the ALJ did not err.

### 3. *Limitations in Adhering to Basic Standards of Neatness and Cleanliness*

Albert's last argument is that "the ALJ failed to consider and account for [Albert's] limitations in the ability to adhere to basic standards of neatness and cleanliness." Pl.'s Br. 15. He argues that there is plenty of evidence in the record to support the assertion that Albert has difficulty maintaining good hygiene. *Id.* For example, Albert's sister, Constance M., testified that Albert "will urinate in a bottle in his room just so he does not have to face touching the toilet and the handle." *Id.* (citing Tr. 61). Constance further testified that Albert only bathes once per month, only shaves once every six months, and only brushes his teeth one or two times per month. *Id.* (citing Tr. 259–60). According to Constance, Albert also refuses to use the bathroom and usually goes to the bathroom outside. *Id.* (citing Tr. 259). Dr. Schutte also noted that Albert "exhibited a body odor" and had trouble getting dressed and managing money. *Id.* at 15–16 (citing Tr. 405–06). Albert argues that the ALJ erred by picking and choosing what evidence to consider and failing to explain how Albert "would be able to maintain and sustain employment" given that his personal hygiene is impacted by his OCD. *Id.* at 16.

The Commissioner argues that Drs. Forgus and Posey noted Albert was "not significantly limited" in his ability "to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Br. Supp. Comm'r's Decision 11 (quoting Tr. 80, 94). The Commissioner argues that "[a]n SAMC's assessment, like the ones in this case, may properly constitute substantial evidence supporting the ALJ's findings." *Id.* The Commissioner also argues

11

that other parts of the record, such as Josefina A. Diaz-Vogt, M.D.'s notes and Social Security Administration employee R. Acosta's interview, provide evidence for the assertion that Albert can maintain appropriate hygiene. *Id.* at 12 (citing Tr. 247, 356–58, 360, 397, 400–02, 409–11). The Commissioner concludes that, although the ALJ cannot "pick and choose" what evidence to consider, the ALJ does not err if he considers all of the evidence but assigns less weight to certain evidence. *Id.*

As mentioned above, "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find the record supported." *Harris v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-487-P, 2023 WL 5826869, at *3 (N.D. Tex. Aug. 22, 2023), *report and recommendation adopted*, No. 2023 WL 5826975 (N.D. Tex. Sept. 8, 2023). It is the role of the ALJ, not the courts, to resolve evidentiary conflicts. *Beck v. Barnhart*, 205 F. App'x 207, 213 (5th Cir. 2006) (per curiam).

Constance's testimony provides support for the assertion that Albert has difficulty managing his hygiene. However, neither Dr. Forgus nor Dr. Posey included any limitations in the ability to adhere to basic standards of neatness and cleanliness in their mental RFC assessments. Tr. 80, 94. In the medical records provided by Dr. Diaz-Vogt, she consistently noted that Albert was well groomed and had good hygiene. *Id.* at 356–61, 400–02, 409–11. Dr. Rattan also noted that Albert presented with "average grooming and hygiene." *Id.* at 393. Medical records from A.J. Ajarwal, M.D., note that Albert was "able to bath self, independent with dressing, able to feed self, independent in toilet." *Id.* at 368.

In his opinion, the ALJ considered all of the relevant evidence. He stated, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 33. The ALJ ultimately concluded that "the medical evidence

does not substantiate the claimant's allegations of incapacitating symptoms." *Id.* at 34. Thus, the ALJ resolved any conflicts in the evidence about Albert's ability to maintain basic standards of neatness and cleanliness, and substantial evidence in the record supports the ALJ's opinion.

### III.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

**SIGNED** this 31st day of May, 2024.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**